**Slip Op. 09-47**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNION STEEL**, <br><br>Plaintiff, <br><br>and <br><br>**WHIRLPOOL CORPORATION**, <br><br>Plaintiff-Intervenor, <br><br>v. <br><br>**UNITED STATES**, <br><br>Defendant, <br><br>and <br><br>**UNITED STATES STEEL CORPORATION and NUCOR CORPORATION**, <br><br>Defendant-Intervenors. | Before: **Timothy C. Stanceu, Judge** <br><br>Court No. 09-00130 |

**OPINION**

[Granting the motion to intervene, and the motion for a preliminary injunction against the liquidation of certain entries, made by proposed plaintiff-intervenor]

Dated: May 19, 2009

*Troutman Sanders LLP* (*Donald B. Cameron*, *Julie C. Mendoza*, *Jeffrey S. Grimson*, *R. Will Planert*, *Brady W. Mills*, and *Mary S. Hodgins*) for plaintiff.

*Drinker Biddle & Reath, LLP* (*William R. Rucker* and *Michelle L. Welsh*) for plaintiff-intervenor.

*Michael F. Hertz*, Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke* and *L. Misha Preheim*); *Daniel J. Calhoun*, Office of

Court No. 09-00130                                                                                       Page 2

Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

    *Skadden Arps Slate Meagher & Flom, LLP* (*Jeffrey D. Gerrish*, *M. Allison Guagliardo*, and *Robert E. Lighthizer*) for defendant-intervenor United States Steel Corporation.

    *Wiley Rein, LLP* (*Timothy C. Brightbill*, *Robert E. DeFrancesco, III*, and *Alan H. Price*) for defendant-intervenor Nucor Corporation.

    Stanceu, Judge: Plaintiff Union Steel brought this action under 19 U.S.C. § 1516a (2006) to contest a determination (the "Final Results") that the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") issued in an administrative review of an antidumping duty order on imports of certain corrosion-resistant carbon steel flat products ("subject merchandise") from the Republic of Korea. The Final Results pertain to imports of the subject merchandise made during the period of August 1, 2006 through July 31, 2007 (the "period of review"). Whirlpool Corporation ("Whirlpool"), a U.S. importer of the subject merchandise, moved to intervene as a matter of right and sought a temporary restraining order ("TRO") and a preliminary injunction against liquidation of its entries subject to the review. Defendant United States opposed Whirlpool's motion to intervene, arguing that Whirlpool lacks standing under the relevant statutory provision because it was not a party to the underlying administrative review proceeding. On May 6, 2009, the court accorded Whirlpool conditional status as plaintiff-intervenor in order to conduct expedited proceedings preparatory to ruling on Whirlpool's motions and granted the TRO application. On May 13, 2009, the court granted, with an opinion to follow, the motions of Whirlpool to intervene as of right, to obtain a preliminary injunction, and to file replies to defendant's oppositions to its motions. In this Opinion, the court sets forth its reasoning for concluding that Whirlpool is

entitled to intervene as of right and that Whirlpool qualifies for a preliminary injunction enjoining liquidation of its entries of subject merchandise that are subject to the review.

### I. BACKGROUND

On August 2, 2007, Commerce notified interested parties of the opportunity to request a review of the antidumping duty order on the subject merchandise. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Review*, 72 Fed. Reg. 42,383, 42,383 (Aug. 2, 2007) (Admin. R. Doc. No. 2). Whirlpool timely filed a submission requesting an administrative review of Pohang Iron and Steel Co., Ltd. ("POSCO"), Union Steel, and LG Chem America, Inc. *Letter from Drinker Biddle Gardner Carton to Sec'y of Commerce* 1-2 (Aug. 30, 2007) (Admin. R. Doc. No. 4) ("*Whirlpool's Letter Requesting Review*"). In response to various requests, Commerce initiated the review, which is the fourteenth administrative review of the antidumping duty order. *Initiation of Antidumping and Countervailing Duty Admin. Reviews and Requests for Revocation in Part*, 72 Fed. Reg. 54,428 (Sept. 25, 2007) (Admin. R. Doc. No. 12); *see Certain Corrosion-Resistant Carbon Steel Flat Prods. from the Republic of Korea: Notice of Final Results of the Fourteenth Admin. Review and Partial Rescission*, 74 Fed. Reg. 11,082 (Mar. 16, 2009) (Admin. R. Doc. No. 192) ("*Final Results*").

Relevant to the question of whether Whirlpool was a party to the administrative review proceeding is Whirlpool's filing of two additional submissions with Commerce. In one of the submissions (the "APO Application"), Whirlpool requested access to business proprietary information according to Commerce's procedures for administering an administrative protective order ("APO"). *Letter from Drinker Biddle Gardner Carton to Sec'y of Commerce* 1 (Oct. 31,

2007) (Admin. R. Doc. No. 26) ("*Whirlpool's APO Application*").  The other submission, dated November 9, 2007, responded to the Department's November 7, 2007 memorandum requesting that interested parties comment on data that Commerce would use to select respondents for review.  *See Letter from Drinker Biddle Gardner Carton to Sec'y of Commerce* 1 (Nov. 9, 2007) (Admin. R. Doc. No. 28) ("*Whirlpool's Submission on Resp't Selection*"); *see Mem. on Customs and Border Patrol Data for Selection of Resp'ts for Individual Review* 1-2 (Nov. 7, 2007) (Admin. R. Doc. No. 27) ("*Dep't's Request for Comments on Resp't Selection*").  With its response to the Department's memorandum, Whirlpool included an entry summary form (Customs Form 7501) listing Whirlpool as an importer of record for subject merchandise.  *Whirlpool's Submission on Resp't Selection* 1-3.  Commerce later issued a memorandum announcing its selection of respondents for the review, in which it stated that Commerce had not selected Whirlpool as a respondent and cited, in a footnote, Whirlpool's November 9, 2007 submission.  *Mem. on Selection of Resp'ts for Individual Review* 5 & n.5 (Dec. 6, 2007) (Admin. R. Doc. No. 45) ("*Dep't's Resp't Selection Mem.*") (citing, in a footnote, *Whirlpool's Submission on Resp't Selection*).  Upon completing the review of the respondents it had selected, Commerce issued the Final Results on March 16, 2009.  *See Final Results*, 74 Fed. Reg. 11,082.

     Plaintiff Union Steel brings three claims in its complaint contesting the Final Results.  It claims, first, that Commerce violated the antidumping statute when, in calculating a weighted-average dumping margin, Commerce regarded the sales that plaintiff made in the United States at prices above normal value to have dumping margins of "zero."  *See* Compl. ¶¶ 5, 8-15.  Plaintiff argues, in support of this claim, that Commerce erred in continuing to apply its "zeroing" practice in antidumping administrative reviews after having abandoned the practice in

Court No. 09-00130                                                                                     Page 5

antidumping investigations. *See id.* ¶ 15. Second, plaintiff claims that Commerce erred in its use of certain model match criteria, arguing that "Commerce used model match criteria that failed to account for the significant differences in cost, price, physical characteristics, end use applications, and production processes between painted products and laminated products." *Id.* ¶ 17. Finally, Union Steel "contests Commerce's change of practice regarding the calculation of the general and administrative ("G&A") and interest expense ratios and Commerce's use of Plaintiff's 2007 financial statements to calculate these ratios." *Id.* ¶ 7. With respect to all three claims, Union Steel maintains that the Department's errors caused a significant overstatement of the weighted-average dumping margin (and the resulting assessment rate) determined by Commerce for plaintiff's sales and entries during the period of review. *Id.* ¶¶ 5-7.

   On April 15, 2009, Whirlpool filed its motion to intervene as of right on the side of plaintiff Union Steel. Mot. to Intervene as of Right 1 ("Whirlpool's Intervention Mot."). Whirlpool argues that it has a stake in this judicial review proceeding because its supplier of the subject merchandise, LG Chem America, Inc., received a weighted-average antidumping duty margin that was based, in part, on the margin Commerce assigned to Union Steel, which Union Steel is challenging before the court. *Id.* at 2. On the same date, April 15, 2009, Whirlpool moved for a TRO and a preliminary injunction to prevent liquidation of its entries of subject merchandise imported during the period of review. Mot. for TRO and Prelim. Inj. 1 ("Whirlpool's TRO and Prelim. Inj. Mot."). On May 4, 2009, defendant filed its opposition to each of Whirlpool's motions. *See* Def.'s Opp'n to Whirlpool Corporation's Mot. to Intervene ("Def.'s Opp'n to Intervention Mot."); Def.'s Opp'n to Whirlpool Corporation's Mot. for TRO and Prelim. Inj. ("Def.'s Opp'n to TRO and Prelim. Inj. Mot.").

Court No. 09-00130                                                                                      Page 6

The court, on May 6, 2009, issued an order granting a TRO, having concluded that "Whirlpool Corporation has made a showing of irreparable harm and a showing of the likelihood of its succeeding on the merits such as is appropriate to the grant of a temporary restraining order in this action" and that "the balance of hardships and public interest weigh in favor of the grant of such temporary restraining order." Order 1, May 6, 2009. The TRO enjoined the liquidation of Whirlpool's entries of subject merchandise that were exported by LG Chem., Ltd. and imported by Whirlpool during the period of review, for a period of twenty days following service of the order. *Id.* at 2.

In the TRO, the court "conditionally granted" Whirlpool "status as a plaintiff-intervenor for the sole purpose of allowing the court to conduct proceedings on an expedited basis preparatory to the court's ruling on Whirlpool Corporation's Motion to Intervene as of Right and on Whirlpool Corporation's motion for preliminary injunctive relief." *Id.* at 1. The order announced that the parties had until May 11, 2009 to request a hearing on the issue of whether Whirlpool should be granted a preliminary injunction and that the court, absent a request for a hearing, would rule on the preliminary injunction motion based on the submissions of the parties. *Id.* at 2. No party requested a hearing.

On May 11, 2009, Whirlpool moved for leave to reply to defendant's oppositions to its motions to intervene and to obtain preliminary injunctive relief. *See* Proposed Pl.-Intervenor's Mot. for Leave to Reply to Def.'s Opp'n to Proposed Pls.-Intervenor's Mot. to Intervene; Proposed Pl.-Intervenor's Mot. for Leave to Reply to Def.'s Opp'n to Proposed Pl.-Intervenor's Mot. for a TRO and Prelim. Inj.; *see also* Proposed Pl.-Intervenor's Reply to Def.'s Opp'n to Proposed Pls.-Intervenor's Mot. to Intervene ("Whirlpool's Intervention Reply"); Proposed

Court No. 09-00130 Page 7

Pl.-Intervenor's Reply to Def.'s Opp'n to Proposed Pl.-Intervenor's Mot. for a TRO and Prelim. Inj. ("Whirlpool's Inj. Reply"). On May 13, 2009, the court granted each of Whirlpool's pending motions.

## II. Discussion

The court first addresses Whirlpool's motion to intervene as a matter of right and then discusses Whirlpool's motion for a preliminary injunction.

### A. Whirlpool's Motion to Intervene As of Right

Congress established a right to intervene in actions commenced under 19 U.S.C. § 1516a. *See* 28 U.S.C. § 2631(j) (2000). The statute provides that

> [a]ny person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that – . . . (B) in a civil action under [19 U.S.C. § 1516a], only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right.

*Id.* § 2631(j)(1). As a U.S. importer of the merchandise that is the subject of the administrative review, Whirlpool qualifies as an "interested party" for purposes of § 1516a. *See* 19 U.S.C. §§ 1516a(f)(3), 1677(9)(A) (2006). However, intervention requires also that Whirlpool have been a party to the agency proceeding below. *See* 28 U.S.C. § 2631(j)(1). The statute does not define the term "party to the proceeding."[1] The Department's regulations define the term as "any

---

[1] Congress also imposed a "party to the proceeding" requirement on a person seeking to initiate a case under 19 U.S.C. § 1516a(a)(2)(A) and 28 U.S.C. § 2631(c). *See* 19 U.S.C. § 1516a(a)(2)(A) (2006) (providing that an action may be commenced by "an interested party who is a party to the proceeding in connection with which the matter arises"); 28 U.S.C. § 2631(c) (2000) (providing that "[a] civil action . . . may be commenced . . . by any interested party who was a party to the proceeding in connection with which the matter arose").

interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding." 19 C.F.R. § 351.102(b) (2006).

In opposing Whirlpool's motion to intervene, defendant argues that "Whirlpool's involvement in the proceeding was limited to requesting an administrative review of subject merchandise it imported during the period of review and applying for access to business proprietary information under an APO." Def.'s Opp'n to Intervention Mot. 2. "Whirlpool made only three filings with Commerce during the course of the proceeding: (1) a request for administrative review for subject merchandise it imported during the period of review, dated August 30, 2007; (2) an APO application, dated October 31, 2008; and (3) a copy of Customs Form 7501, dated November 9, 2007, to supplement its APO application." *Id.* Although acknowledging that Whirlpool filed a request for an administrative review relating to the subject merchandise Whirlpool imported during the period of review, defendant argues that Whirlpool communicated nothing of substance to Commerce during the administrative review proceeding. *Id.* at 5.

The court does not agree with defendant's argument. Whirlpool submitted, in writing, factual information to Commerce during the review. Whirlpool not only filed the APO Application but also responded to the Department's memorandum requesting certain information that it would use in selecting respondents. *See Whirlpool's APO Application*; *Whirlpool's Submission on Resp't Selection*; *Dep't's Request for Comments on Resp't Selection*. Whirlpool provided that information in a letter indicating that it was an importer of subject merchandise and attached a Customs Form 7501 for merchandise it imported during the period of review. *Whirlpool's Submission on Resp't Selection*; *see* Whirlpool's Intervention Reply 6. What is

Court No. 09-00130                                                                                                         Page 9

more, Commerce acted upon the information Whirlpool submitted. *See Dep't's Resp't Selection Mem.* 5 & n.5. As mentioned previously, Commerce, in announcing its selection of respondents for the review, stated that Commerce declined to select Whirlpool as a respondent and cited, in a footnote, Whirlpool's November 9, 2007 submission. *Id.* Commerce itself having acknowledged implicitly Whirlpool's participation in the proceeding by responding to Whirlpool's submission containing factual information, it would be an odd result for the court now to hold that Whirlpool may not intervene.

Referring to the actions necessary to satisfy the party-to-the-proceeding requirement for intervention, defendant cites *Dofasco Inc. v. United States*, 31 CIT __, __, 519 F. Supp. 2d 1284, 1288 (2007), for the principle that "filings and submissions of a purely procedural nature are insufficient to meet this threshold." Def.'s Opp'n to Intervention Mot. 4. However, the argument defendant advances mischaracterizes Whirlpool's submission of factual information during the review, the significance of which cannot be dismissed summarily as "purely procedural" in the context of that review. That argument also misconstrues the holding in *Dofasco*. The facts in *Dofasco* are not analogous to those bearing on the question of Whirlpool's eligibility to intervene as of right. In *Dofasco*, the party seeking to intervene had submitted only an "entry of appearance" letter indicating that it would participate in the review and enclosed with that letter an application to receive information under an APO. 31 CIT at __, 519 F. Supp. 2d at 1287. Whirlpool's posture vis-à-vis the underlying administrative proceeding differs from that of the party seeking to intervene in *Dofasco*. Whirlpool entered subject merchandise during the period of review and requested administrative review of producers and exporters of the subject merchandise imported on those entries. *See Whirlpool's Letter Requesting Review*;

*Whirlpool's Submission on Resp't Selection* 1-3 (submitting an entry summary form demonstrating that Whirlpool was an importer of record for subject merchandise during the period of review). It also submitted factual information relevant to the respondent selection process. *See Whirlpool's Submission on Resp't Selection* 1.

Defendant's argument against intervention also relies on *Encon Industries, Inc. v. United States*, 18 CIT 867, 868 (1994), and *Matsushita Electric Industrial Co. v. United States*, 2 CIT 254, 258, 529 F. Supp. 664, 668-69 (1981). Def.'s Opp'n to Intervention Mot. 5-6. *Encon* is not on point because the Court of International Trade, in that case, ruled on exhaustion grounds rather than on grounds stemming from the party-to-the-proceeding requirement in 19 U.S.C. § 1516a(a)(2)(A) and 28 U.S.C. § 2631(c). 18 CIT at 868. *Matsushita* is also inapposite; in that case, two associations and three unions sought to intervene in a challenge to an administrative proceeding before the International Trade Commission ("ITC"). 2 CIT at 255, 529 F. Supp. at 666. The Court of International Trade denied the motion to intervene with respect to the associations because the associations did not satisfy the "interested party" requirement. *Id.* at 256, 529 F. Supp. at 667. The court denied the motion to intervene with respect to the unions because the unions had not even entered an appearance in the administrative proceeding before the ITC. *Id.* at 258, 529 F. Supp. at 668 (stating that the court was "not at liberty to give the term 'party' an expansive meaning, even if [the court] were to deemphasize the I.T.C. rule which defines a party as one who has entered an appearance, a requirement which the three unions did not satisfy").

The facts relevant to Whirlpool's intervention motion are more analogous to those of *Valley Fresh Seafood, Inc. v. United States*, 31 CIT __, Slip Op. 07-179 (Dec. 17, 2007). In

*Valley Fresh*, the Court of International Trade concluded that Valley Fresh, an importer of the subject merchandise, had participated in the proceeding to the extent necessary to satisfy the party-to-the-proceeding requirement of 19 U.S.C. § 1516a(a)(2)(A) and 28 U.S.C. § 2631(c). *Valley Fresh*, 31 CIT at __, Slip Op. 07-179 at 7-8, 8 n.2. The court noted that the complaint alleged that "Valley Fresh imported merchandise sold by CATACO, an exporter and producer whose sales were reviewed by Commerce in the administrative review proceeding." *Id.* at __, Slip Op. 07-179 at 7. The court reasoned that it "may infer from this allegation that sales of CATACO's merchandise to Valley Fresh were among the sales of subject merchandise that Commerce examined in conducting the administrative review." *Id.* at __, Slip Op. 07-179 at 7-8. The court also noted that Valley Fresh had placed a document, an anti-reimbursement statement, on the record of the administrative review. *Id.* at __, Slip Op. 07-179 at 8. The court concluded that the importer's allegations that their entries were subject to the review, coupled with the submission during the administrative proceeding, were sufficient to demonstrate that the importer, for purposes of standing, was a party who participated in the underlying administrative review proceeding. *Id.* at __, Slip Op. 07-179 at 8 & n.2.

      In the alternative, defendant argues that Whirlpool's motion to intervene should be denied because Whirlpool, having failed to submit a brief during the administrative review proceeding, could raise no argument before the court for which it would have exhausted its administrative remedies. Def.'s Opp'n to Intervention Mot. 6-7 (citing *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008); *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007); *Gerber Food (Yunnan) Co. v. United States*, 33 CIT __, 601 F. Supp. 2d 1370 (2009); and *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 28 CIT 627, 644,

342 F. Supp. 2d 1191, 1205 (2004)). Defendant's exhaustion argument is premature. At this point in the judicial proceedings, the court does not know what arguments Whirlpool may make. Furthermore, the court declines to speculate whether the exhaustion requirement, or an exception to that requirement, may apply. For example, in some circumstances a court may excuse a party's failure to raise an argument before the administrative agency if the agency nevertheless considered the issue. *See Holmes Prods. Corp. v. United States*, 16 CIT 1101, 1104 (1992) (citing *Wash. Ass'n for Television and Children v. FCC*, 712 F.2d 677, 682 n.10 (D.C. Cir. 1983)). "[C]ourts have waived exhaustion if the agency has had an opportunity to consider the identical issues presented to the court . . . but which were raised by other parties, or if the agency's decision, or a dissenting opinion, indicates that the agency had the opportunity to consider the very argument pressed by the petitioners on judicial review." *Natural Res. Def. Council, Inc. v. EPA*, 824 F.2d 1146, 1151 (D.C. Cir. 1987) (internal quotation marks, brackets, and citations omitted); *cf. N.Y. State Broadcasters Ass'n v. United States*, 414 F.2d 990, 994 (2d Cir. 1969) (concluding that the petitioners were not precluded from making their constitutional arguments before the court even though "the [agency] either would not or could not declare that [the statute] is unconstitutional," and another party had explicitly raised those issues before the agency); *see also Valley Fresh*, 31 CIT at __, Slip Op. 07-179 at 10-11.

     For these reasons, the court concludes that Whirlpool participated in the administrative review proceeding to the extent necessary to qualify as a party to that proceeding and, therefore, qualifies for intervention as a matter of right under 28 U.S.C. § 2631(j)(1)(B).

Court No. 09-00130 Page 13

## B. Whirlpool's Motion for a Preliminary Injunction

Whirlpool also seeks to enjoin liquidation of its entries pending the outcome of judicial review. Whirlpool's TRO and Prelim. Inj. Mot. 1. To prevail on a motion for preliminary injunctive relief, Whirlpool must demonstrate (1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the petitioner. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

With respect to the irreparable injury factor, Whirlpool has demonstrated that irreparable injury is imminent if the court does not enjoin liquidation of Whirlpool's entries. *See* Whirlpool's TRO and Prelim. Inj. Mot. 3-4. A party whose entries have liquidated no longer may obtain relief in the form of a revised assessment rate on its entries. *See SKF USA, Inc. v. United States*, 512 F.3d 1326, 1331 (Fed. Cir. 2008); *Zenith*, 710 F.2d at 810.

Concerning the question of whether the public interest would be served by the injunction, it is well-settled that "an overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible." *See Parkdale Int'l v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007); *see also Lasko Metal Prods., Inc. v. United States*, 43 F.3d 1442, 1443 (Fed. Cir. 1994) (stating that "there is much in the statute that supports the notion that it is Commerce's duty to determine margins as accurately as possible"). Accurate and effective enforcement of trade laws serves the public interest. Hence, the public interest is served by enjoining the liquidation of Whirlpool's entries so that the correct assessment rate may be applied to those entries upon the final judgment in this case. *See* Whirlpool's TRO and Prelim. Inj. Mot. 6.

The balance of hardships decidedly favors the injunction sought by Whirlpool. Whirlpool correctly argues that defendant, through Customs, has secured cash deposits for Whirlpool's entries. *Id.* at 5. Should the final rate determined after judicial review exceed the cash deposit, the United States will be entitled to collect the duties owed, with interest. Contrastingly, the absence of an injunction would result in liquidations of Whirlpool's entries at the amounts of antidumping duty set forth in the entry documentation, which liquidation would preclude any revision of the assessment rate.

With regard to the requirement to demonstrate a likelihood of success on the merits, Whirlpool points out that the Court of International Trade, on March 25, 2009, granted Union Steel's motion to enjoin liquidation of certain entries subject to the administrative review. *Id.* at 5-6. That motion, filed on March 24, 2009, made a showing on the four injunctive factors, including Union Steel's likelihood of succeeding on the merits for the three claims that Union Steel brings in its complaint. Consent Mot. for Prelim. Inj. 3-12. Whirlpool seeks to intervene on the side of Union Steel. *See* Whirlpool's Intervention Mot. 1; Compl. ¶¶ 5-7.

Defendant opposes Whirlpool's motion for a preliminary injunction on two grounds, both of which relate to the question of whether Whirlpool has demonstrated a likelihood of success on the merits. First, the United States argues that because Whirlpool is not entitled to intervene as a matter of right, it is not a party to this action and therefore not entitled to a preliminary injunction. Def.'s Opp'n to TRO and Prelim. Inj. Mot. 3-4. For the reasons previously stated, Whirlpool, as an interested party that was a party to the proceeding before Commerce, is entitled to intervene as a matter of right.

   Defendant's second ground for opposing the motion for an injunction, while relating to the issue of likelihood of success, appears also to be based on an argument that the court lacks jurisdiction to order the injunctive relief Whirlpool seeks. Defendant argues, specifically, that Whirlpool is not entitled to such relief because Whirlpool seeks to enjoin liquidation of its own entries, which are not the subject of plaintiff's complaint in this action. *Id.* at 4-6. Defendant directs the court to the established principle that "'an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.'" *Id.* at 4 (quoting *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944)). Defendant argues that "an intervenor's role here is limited to supporting the plaintiff in asserting its own claims for relief." *Id.* (citing *Laizhou Auto Brake Equip. Co. v. United States*, 31 CIT __, __, 477 F. Supp. 2d 1298, 1299-1301 (2007); *Torrington Co. v. United States*, 14 CIT 56, 58-59, 731 F. Supp. 1073, 1076 (1990); and *Nat'l Ass'n of Mirror Mfrs. v. United States*, 11 CIT 648, 651-52, 670 F. Supp. 1013, 1015 (1987)). Defendant argues, citing *Laizhou*, 31 CIT at __, 477 F. Supp. 2d at 1299-1301, that the injunction Whirlpool seeks impermissibly would enlarge the complaint filed by the plaintiff. *Id.* at 4-5.

   Relying in part on *NSK Corp. v. United States*, 32 CIT __, 547 F. Supp. 2d 1312 (2008), Whirlpool replies that a plaintiff-intervenor in an action under 28 U.S.C. § 1581(c) is entitled to injunctive relief to prevent liquidation pending the outcome of judicial review. Whirlpool's Inj. Reply 5. In *NSK*, the Court of International Trade concluded that the intervenor in the action before it was entitled to obtain an injunction against liquidation of its own entries. 32 CIT at __, 547 F. Supp. 2d at 1318. The opinion in *NSK* reasoned that because the plaintiff's complaint was challenging a specific antidumping duty determination, the action already encompassed all

entries covered by that determination. *Id.* The Court of International Trade in *NSK* concluded, further, that because the proposed legal theories and arguments before the court would remain unchanged, the intervenor was not seeking to enlarge the substantive issues already before the court. *Id.* (stating that "the court views the principle of enlargement as better reserved for situations in which an intervenor adds new legal issues to those already before the court" and that "the fact that an intervenor brings additional entries to the litigation carries no weight with regard to enlargement").

Defendant states that "[w]e respectfully disagree with the decision in *NSK*" and urges that the court instead follow *Laizhou*, 31 CIT at __, 477 F. Supp. 2d at 1299-1301. Def.'s Opp'n to TRO and Prelim. Inj. Mot. 4-5. The court agrees with the conclusion in *NSK* that a grant under 19 U.S.C. § 1516a(c)(2) of an injunction against the liquidation of entries does not violate the principle, expressed by the Supreme Court in *Vinson*, 321 U.S. at 498, that an intervenor may not enlarge the already-pending issues or compel an alteration of the nature of the proceeding. *See NSK*, 32 CIT at __, 547 F. Supp. 2d at 1317. Whirlpool's motion for an injunction does not signify that it intends to raise before the court any substantive issues that are not raised by plaintiff's complaint. Nor would an injunction "'compel an alteration of the nature of the proceeding'" within the meaning of that concept as applied by *Vinson*, which involved a judicial proceeding dissimilar to this one. *Id.* (quoting *Vinson*, 321 U.S. at 498). Because it need do no more than allow the final judicial determination resulting from this litigation to govern entries that already were the subject of the administrative review and the Final Results, the grant of the injunction Whirlpool seeks would not, in any meaningful sense, "compel an alteration of the nature of the proceeding."

Court No. 09-00130                                                                                                                              Page 17

Defendant's reliance on *Torrington*, 14 CIT at 59, 731 F. Supp. at 1076, is misplaced. *See* Def.'s Opp'n to TRO and Prelim. Inj. Mot. 4-5. As explained in *NSK*, *Torrington* involved a circumstance in which a respondent, in the position of intervenor, attempted to enlarge the substantive issues before the Court of International Trade by asserting an affirmative defense that had not been raised between the original parties. *NSK*, 32 CIT at __, 547 F. Supp. 2d at 1317-18 (citing *Torrington*, 14 CIT at 56-57, 731 F. Supp. at 1074-75). Nor is *National Association of Mirror Manufacturers* instructive on the issue before the court. In that case, the defendant-intervenor attempted, unsuccessfully, to bring an entirely new claim that was not made in the plaintiff's complaint or the defendant's answer. 11 CIT at 652, 670 F. Supp. at 1015.

In opposition to the grant of an injunction, defendant also relies on the language of USCIT Rule 56.2(a), which provides that "[a]ny motion for a preliminary injunction to enjoin the liquidation of entries *that are the subject of the action* must be filed by a party to the action within 30 days after service of the complaint, or at such later time, for good cause shown." Def.'s Opp'n to TRO and Prelim. Inj. Mot. 5; USCIT Rule 56.2(a) (emphasis added). Defendant's argument reads too much into the language of the Rule, which addresses generally the time at which a party must file its motion for the injunction and is not specifically directed to the intervention-related issue before the court. Moreover, defendant's overly broad construction of the language of the Rule would disregard considerations that were important to Congress in enacting the statutory scheme that the Rule, in part, is intended to effectuate. Congress considered an injunction against liquidation to be so significant to the judicial review of a determination in an antidumping proceeding that it expressly provided the opportunity for such an injunction in 19 U.S.C. § 1516a(c)(2). Congress also attached importance to a party's

Court No. 09-00130                                                                    Page 18

opportunity to intervene in an action brought under 19 U.S.C. § 1516a, as demonstrated by its providing that the intervention of an interested party who was a party to the underlying administrative proceeding is an intervention as a matter of right. 28 U.S.C. § 2631(j)(1). By seeking to deny the availability of an injunction in the general circumstances posed by Whirlpool's motion, defendant's litigation position, if adopted by the court, would diminish the significance of the intervention procedure established by those statutory provisions.

In summary, the court concludes that Whirlpool has made a showing on the irreparable harm and likelihood of success factors such as is appropriate to the grant of an injunction against liquidation according to 19 U.S.C. § 1516a(c)(2). It further concludes that the balance of hardships and public interest weigh in favor of granting such injunctive relief.

### III. CONCLUSION

Whirlpool, an interested party, participated in the administrative proceeding culminating in the Final Results to the extent necessary to satisfy the party-to-the-proceeding requirement of 28 U.S.C. § 2631(j)(1)(B). Whirlpool also has demonstrated that it is entitled to an injunction against the liquidation of its affected entries.

                                                           /s/ Timothy C. Stanceu
                                                           Timothy C. Stanceu
                                                           Judge

Dated: May 19, 2009
       New York, New York

# NOTICE OF ENTRY AND SERVICE

     This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

     Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

     Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

                                                                       Tina Potuto Kimble
                                                                       Clerk of the Court

Date: _____  By: _____
                                                                                Deputy Clerk